# UNITED STATES

### v.

## Maldonado CROSLAND.

### Crim. No. 93–94–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

May 12, 1993.

---

Thomas Hollenhorst, Asst. U.S. Atty., Alexandria, VA, for plaintiff.

William B. Moffitt, Moffitt, Zwerling & Kemler, Alexandria, VA, for defendant.

Jonathan Shapiro, Alexandria, VA, for Joseph, Greenwald & Laake, P.A.

## MEMORANDUM OPINION

ELLIS, District Judge.

■ This matter calls upon the Court to resolve questions concerning the scope of the government's subpoena powers, both in the trial and the grand jury contexts. The issues presented are particularly important given the role of the courts in maintaining the proper, delicate balance between the vital need, on the one hand, to provide the government with the means to ferret out and prosecute crime and, on the other hand, the equally vital need to protect individuals from unwarranted interference with their right to defend themselves against accusations of criminal activity. Essential in maintaining this balance is ensuring the government's strict adherence to prescribed procedures when exercising its subpoena powers.

In June 1992, the Federal Bureau of Investigation began an investigation into the drug trafficking activities of a large-scale cocaine distribution organization operating in the Eastern District of Virginia and elsewhere. On October 2, 1992, a search warrant was executed by the Alexandria Police Department at 300 Yoakum Parkway, Apartment 816, Alexandria, Virginia, an apartment leased by the defendant, Maldonado Crosland. During the search, police seized approximately 50 grams of cocaine base, commonly known as "crack," $228,174 in United States currency, a digital scale, a money counter, a cutting board with cocaine base residue, numerous small zip-lock bags, several jars containing cocaine base residue, and several firearms, including a machine gun with a magazine containing 89 rounds of ammunition.[1]

On October 22, 1992, Maldonado Crosland was arrested in Landover, Maryland. A search incident to his arrest resulted in the seizure of $29,301 in United States currency laced with cocaine and a 1992 Nissan 300ZX automobile. Thereafter, the government was notified that Crosland was represented by Fred Joseph of the law firm Joseph, Greenwald & Laake, P.A. (the "Law Firm").

On February 22, 1993, government counsel learned that on February 2, 1993, Crosland had filed an affidavit of indigence with the Drug Enforcement Administration in support of his claim to contest the forfeiture of his Nissan automobile. In his affidavit, Crosland stated that his last employment was in September 1992, and that his present cash holdings amounted to only $60. He further stated he had earned only $20,000 to $30,000 in the previous twelve months.

On February 23, 1993, the government applied for and obtained from the Clerk of the Court a grand jury subpoena *duces tecum* which directed the custodian of records of the Law Firm to produce:

> Any and all documents and records concerning the payment of any moneys by, or on behalf of, Maldonado Crosland during the period September 1, 1992, to the present, including, but not limited to, receipts, fee records, bank deposits and monetary instruments.

The subpoena was served by facsimile transmission on William Moffitt, an attorney serving as local counsel for the Law Firm in connection with its representation of Crosland. Although the subpoena was not served until the afternoon of February 23, it called for production of the requested documents at 9:00 a.m. on that same day, February 23. The cover letter accompanying the facsimile transmission indicated that although the documents were due to be produced on February 23, "the Government has no objection to the production of the documents on or before [March 12, 1993]." Mr. Moffitt forwarded the subpoena to Mr. Joseph on the morning of February 24. The next day, on February 25, 1993, before the Law Firm had complied with the grand jury subpoena, the grand jury indicted Crosland, charging him in seven

---

1. On April 9, 1993, the Court heard, and denied, Crosland's motion to suppress this evidence on the ground that the search of his apartment was conducted in violation of the Fourth Amendment.

counts with drug conspiracy and substantive drug and firearm offenses.

On March 10, 1993, the Law Firm moved to quash the grand jury subpoena *duces tecum*, on the grounds, *inter alia*, that (1) service of the subpoena was improperly made on Mr. Moffitt, an individual with no authority to accept service on behalf of the Law Firm, (2) the subpoena was invalid because it was served subsequent to the deadline set forth on its face for production of the documents, (3) the subpoena unlawfully infringed Crosland's Sixth Amendment right to counsel, (4) the information sought by the subpoena was protected by the attorney-client privilege, and (5) the dominant purpose of the subpoena was the impermissible goal of producing trial evidence in connection with the criminal prosecution of Crosland.[2]

On March 12, 1993, the Court held a hearing on the motion to quash the grand jury subpoena *duces tecum*. At the conclusion of the argument on the motion, the Court indicated that it would take the motion under advisement. Immediately following the hearing, the government served a trial subpoena *duces tecum* on counsel for the Law Firm, seeking production of precisely the same materials as the grand jury subpoena had demanded. Although Crosland's criminal trial was not scheduled until May 17, 1993, the subpoena called for production of the requested documents by March 26, 1993. On March 22, 1993, the Law Firm moved to quash the trial subpoena.[3] The Court held a hearing on that motion on April 9, 1993, and, after supplemental briefing, another hearing on April 23, 1993. The Law Firm's obligation to comply with both subpoenas was suspended pending resolution of the motions to quash. Now, after mature consideration, the Court has determined that the Law Firm's motions to quash both the grand jury

subpoena and the trial subpoena should be granted.

### A. Grand Jury Subpoena

■ The Law Firm's arguments in support of quashing the grand jury subpoena can be divided into two broad categories. First, the Law Firm argues that the government is precluded, under any set of circumstances, from obtaining the information sought by the subpoena at issue. This category includes the contentions that the subpoena violated Crosland's Sixth Amendment right to counsel and that it sought disclosure of communications protected by the attorney-client privilege. In essence, the arguments in this category rely on the premise that allowing the government to demand fee information from a criminal defendant's attorney by means of a grand jury subpoena impermissibly burdens the attorney-client relationship by forcing the defense attorney to furnish evidence potentially adverse to the defendant.

The Law Firm's arguments in this regard are far from frivolous. It is not difficult to imagine that grand jury fee information subpoenas directed to a target's counsel might well have an undesirable chilling effect on a target's right to a conflict free counsel of his choice. Yet, the Law Firm's position in this regard has been flatly rejected by the Fourth Circuit's decision in *In Re Grand Jury Matter*, 926 F.2d 348 (4th Cir.1991). In that case, the court held that, in order to state a valid Sixth Amendment claim, a defendant must show that a subpoena served on an attorney creates actual conflict between the attorney and his client. Faced with a set of facts indistinguishable from those present here, the court refused to set forth a *per se* rule, or even a presumption, that a subpoena directed at fee information created such a conflict. *Id.* at 351.[4] Here, as in *In Re*

**2.** Crosland separately filed a motion to intervene and a motion to quash the subpoena. The government did not oppose intervention. Crosland's motion raises the same issues as those raised by the Law Firm. For the sake of clarity, this opinion will refer only to the Law Firm's motion, but the reasoning and rulings in this opinion are equally applicable to, and dispositive of, Crosland's motion.

**3.** Crosland also joined in this motion. Again, for the sake of clarity, this opinion will refer only to the Law Firm's motion but is equally applicable to, and dispositive of, Crosland's motion.

**4.** Indeed, the Supreme Court, in *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989), has gone even further, holding that it does not violate a defendant's Sixth Amendment right to counsel for the government to obtain a pretrial restrain-

*Grand Jury,* there has been no specific show-· ing that compliance with the subpoena would force the Law Firm to withdraw from the representation of Crosland. Similarly, with regard to the attorney-client privilege, the court followed previous circuit precedent holding that the privilege " 'normally does not extend to the payment of attorney's fees and expenses.' " *Id.* at 351, quoting *United States v. (Under Seal),* 774 F.2d 624, 628 (4th Cir.1985), *cert. denied,* 475 U.S. 1108, 106 S.Ct. 1514, 89 L.Ed.2d 913 (1986). Accordingly, the court upheld the issuance to a law firm of a grand jury subpoena *duces tecum* for documents relating to the payment of a defendant's attorney's fees.

■■■ The Law Firm's second category of arguments are not concerned with whether documents such as those sought by the subpoena in question are properly discoverable by means of a grand jury subpoena. Instead, these arguments focus on the validity of the subpoena as issued in this case. First, the Law Firm contends that, because the grand jury indicted Crosland prior ,to the firm's production . of the documents, the grand jury subpoena became an impermissible means of conducting post-indictment discovery on pending criminal charges. While a presumption of regularity attaches to grand jury proceedings, the government's authority to invoke the investigatory power of the grand jury by issuing grand jury subpoenas is not unlimited. *See United States v. R. Enterprises, Inc.,* 498 U.S. 292, 298–302, 111 S.Ct. 722, 727–28, 112 L.Ed.2d 795 (1991); *United States v. Moss,* 756 F.2d 329, 332 (4th Cir.1985). Specifically, "it is the universal rule that prosecutors cannot utilize the grand jury solely or even primarily for the purpose of gathering evidence in pending litigation." *Id.* In this case, the Law Firm argues that because the indictment against Crosland had already issued, the requested documents were therefore irrelevant to the grand jury's decision to indict. It follows, according to the Law Firm, that the only plausible explanation for the government's subpoena is that it was impermissibly intended to accumulate evidence against Crosland on the pending criminal charges.

The government responds by representing that "[w]hile we do expect compliance with the subpoena to provide evidence relevant to Crosland's case, the indictment of Crosland did not close the grand jury investigation and we expect that compliance with the subpoena may well provide valuable information for that continuing investigation." As outlined above, a grand jury subpoena will only be found invalid if it is issued "solely or ... primarily for the purpose of gathering evidence in pending litigation." *Moss,* 756 F.2d at 332. Given the government's representation that the grand jury investigation is ongoing, it cannot be said that the sole or primary motivating factor of the grand jury subpoena at issue here is to gather evidence on the charges pending against Crosland. *See id.*

Of course, the government, in virtually every case, could keep a grand jury investigation alive against an indicted defendant, and thereby continue to utilize grand jury subpoenas against that defendant, simply by making a representation that it was contemplating bringing further charges. Uncritical acceptance of this practice would undermine, if not nullify, the rule that grand jury subpoenas cannot be used for post-indictment discovery. The circumstances of this case, however, support the government's contention that material evidence of criminal activity, unrelated to the pending charges, is likely to result from the production mandated by the subpoena. Mr. Joseph is not a court-appointed . attorney; he was privately retained by Crosland. Crosland, however, has filed an affidavit of indigence in connection with a forfeiture proceeding. These facts suggest at least two scenarios that might warrant further investigation by the grand jury into crimes other than those for which Crosland was indicted. First, Crosland may be paying his attorneys out of funds he did not reveal in his affidavit of indigence. Disclosure of this fact could lead to Crosland's indictment for making false statements, as well as to further forfeiture proceedings. Second, it is possible that Crosland's attor-

---

ing order prohibiting a defendant from transferring assets suspected to be drug proceeds, even if

such assets are necessary to pay the defendant's attorney's fees.

ney's fees are being paid by individuals associated with Crosland's alleged drug distribution activities. Disclosure of the identity of those persons could lead to the indictment and prosecution of other individuals. While it is also possible that payment of Crosland's fees has a non-criminal explanation (*i.e.* the Law Firm is handling the case *pro bono* or the fees are being paid by a wealthy relative of Crosland), the government is justified in continuing its grand jury investigation into the matter. In sum, the circumstances of this case warrant acceptance of the government's representation that the primary purpose of the subpoena is not to acquire further evidence in connection with the charges currently pending against Crosland. The grand jury's continuing interest in this matter is not just a cover for the continued use of the grand jury's expansive investigatory powers, but rather a legitimate inquiry into suspected, unindicted criminal behavior.

 Next, the Law Firm argues that the grand jury subpoena, even if valid, was improperly served. It is well settled in the criminal context, that before a court will enforce a subpoena, "a strict compliance with the rules for the service of subpoenas must be proved...." *United States v. Davenport*, 312 F.2d 303, 307 (7th Cir.), *cert. denied*, 374 U.S. 841, 83 S.Ct. 1895, 10 L.Ed.2d 1061 (1963). Rule 17(d), setting forth the manner of service of a subpoena, states in relevant part, "[s]ervice of a subpoena shall be made by delivering a copy thereof to the person named...." Rule 17(d), Fed.R.Crim.P. In this case, the person named in the subpoena was the Custodian of Records of the Law Firm. Plainly, the government did not deliver the subpoena to the person named. Mr. Moffitt, to whom the subpoena was "delivered" by facsimile transmission, merely

served as local counsel to the Law Firm in the criminal proceedings against Crosland, and was not authorized to accept service of a subpoena on behalf of the firm. Neither precedent, nor any provision in the Federal Rules of Criminal Procedure supports the government's argument that the Law Firm's actual receipt of the subpoena had the effect of rectifying improper service. Because the subpoena was not served in accordance with the controlling provisions of the Federal Rules, the Law Firm's motion to quash must be granted.[5]

### B. Trial Subpoena

After the Law Firm's motion to quash the grand jury subpoena was taken under advisement, the government promptly served a trial subpoena on the firm requesting precisely the same materials. This subpoena, too, fails, for it does not meet the settled standards for a criminal trial subpoena.

 The standards governing use of a trial subpoena are different from those controlling use of a grand jury subpoena. *See R. Enterprises*, 498 U.S. at 297–300, 111 S.Ct. at 726–27. The Supreme Court, in *United States v. Nixon*, 418 U.S. 683, 700, 94 S.Ct. 3090, 3103, 41 L.Ed.2d 1039 (1974), identified the three requirements a trial subpoena must meet: "(1) relevancy; (2) admissibility; (3) specificity." In this instance, the government's subpoena is deficient on the "specificity" prong of the *Nixon* test. In terms unmistakably reminiscent of a discovery request, the subpoena sought:

> Any and all documents and records concerning the payment of any moneys by, or on behalf of, Maldonado Crosland during the period September 1, 1992, to the present, including, but not limited to, receipts,

---

5. Also somewhat questionable is the use of facsimile transmission to effect service. It is unclear whether facsimile transmission is contemplated by Rule 17(d)'s reference to "delivering" the subpoena. In the civil context, several courts have found that facsimile transmissions do not constitute valid service under Rule 5(b) of the Federal Rules of Civil Procedure. *See, e.g., Mushroom Associates v. Monterey Mushrooms, Inc.*, 1992 WL 442898, *3, 1992 U.S. Dist. LEXIS 20629, *9 (N.D.Cal.1992); *Salley v. Board of Governors, University of North Carolina*, 136

F.R.D. 417 (M.D.N.C.1991). More questionable is the fact that the subpoena, by its terms, called for production at a time before it could have been validly served. It is inappropriate for a subpoena to be drafted in a manner such that the recipient is in violation of the subpoena immediately upon service. Yet, whether these additional concerns are independent grounds for quashing the grand jury subpoena need not be further explored, given the government's failure to serve the subpoena on the proper party.

fee records, bank deposits and monetary instruments.

As the Court stated in *Nixon,* Federal Rule of Criminal Procedure 17(c), which authorizes the trial subpoena *duces tecum,* "was not intended to provide a means of discovery for criminal cases." *Id.* at 698, 94 S.Ct. at 3102; *see also United States v. Fowler,* 932 F.2d 306, 311 (4th Cir.1991) ("Rule 17(c) ... is not a discovery device"). Rather, the availability of a trial subpoena was intended to allow each side in a criminal trial to have "compulsory process to secure evidence in his favor." *In Re Martin Marietta Corporation,* 856 F.2d 619, 621 (4th Cir.1988), *cert. denied,* 490 U.S. 1011, 109 S.Ct. 1655, 104 L.Ed.2d 169 (1989). The specificity requirement announced in *Nixon* is designed to ensure that the use of trial subpoenas is limited to securing the presence at trial of particular documents or sharply defined categories of documents. Without the requirement that documents be specifically identified by the trial subpoena, such subpoenas could be utilized for the type of discovery-oriented document requests decried as "fishing expedition[s]," and expressly prohibited by the Supreme Court. *See Bowman Dairy Co. v. United States,* 341 U.S. 214, 221, 71 S.Ct. 675, 679, 95 L.Ed. 879 (1951).

The fact that the government does not know who paid Crosland's attorney's fees, and is seeking to determine this information by means of a subpoena, points persuasively to the conclusion that this trial subpoena is an impermissible "fishing expedition," not a proper request for production of specifically identified documents. There are, as earlier hypothesized, a number of credible innocent scenarios as to who has paid Crosland's fees that, if divulged in response to a subpoena, would not provide evidence of any criminal activity. Because there is no way to determine whether the requested documents would in fact produce evidence related to the pending charges, the trial subpoena in question must be quashed as insufficiently specific.

■ The government argues forcefully that today's holding places upon them the unfairly heavy burden of knowing, and representing to the Court in support of their sub-poena, the exact contents of the subpoenaed materials prior to having the benefit of reviewing those materials. While, at first glance, this burden may seem unduly restrictive, it is only because the term "subpoena," most often encountered in the civil practice or grand jury context, carries with it a strong connotation of "discovery." The intuitive appeal of the government's argument arises from the fact that generally, in these other contexts, the issuer of a subpoena does not know the contents of the documents prior to their production. Unlike subpoenas in other contexts, however, the criminal trial subpoena is not a tool for discovery. Because a criminal trial subpoena is designed as a means of providing compulsory process for obtaining specific, identifiable documents, there is no unfairness in requiring the party issuing such a subpoena to detail, with substantial specificity, precisely what documents it seeks and why, if it is not readily apparent, those documents would be relevant and admissible at trial. The fact that the government could not, no matter how it phrased its request, meet *Nixon*'s requirement of specificity for criminal trial subpoenas shows conclusively that the subpoena at issue was designed primarily for discovery purposes, and not to secure evidence for trial.

The result reached here is consistent with relevant precedent. In *Nixon,* the Supreme Court upheld a trial subpoena issued by a district court for production of certain tape recordings and documents relating to conversations between the President of the United States and his advisers. The Court held that although "the contents of the subpoenaed tapes could not at that stage be described fully by the Special Prosecutor, ... there was a sufficient likelihood that each of the tapes contains conversations relevant to the offenses charged in the indictment." *Nixon,* 418 U.S. at 700, 94 S.Ct. at 3103. The Supreme Court based its holding on the fact that:

> [w]ith respect to many of tapes, the Special Prosecutor offered the sworn testimony or statements of one or more of the participants in the conversations as to what was said at the time. As for the remainder of the tapes, the identity of the participants

and the time and place of the conversations, taken in their total context, permit a rational inference that at least part of the conversations relate to the offenses charged in the indictment.

*Id.* As is clear from this passage, in *Nixon* the prosecutor had a much clearer knowledge of the contents of the subpoenaed materials than does the prosecutor in the instant case. That knowledge allowed the prosecutor in *Nixon* to subpoena tapes of specific conversations of which he already possessed a generalized knowledge. In the instant case, the Government has no knowledge concerning what would be produced in response to its subpoena. In fact, there remains a substantial probability that the subpoenaed documents will be unrelated to *any* criminal activity. *Compare Bowman Dairy,* 341 U.S. at 221, 71 S.Ct. at 679 (invalidating portion of trial subpoena that requested documents related to the indictment "whether or not they might constitute evidence with respect to the guilt or innocence of any of the defendants...") *with United States v. Gross,* 24 F.R.D. 138, 141 (S.D.N.Y.1959) (upholding trial subpoena where government affidavits established that the "documents called for are directly related to the charges contained in the information.").

The indeterminate nature of the documents requested by the government also poses problems under the remaining two prongs of the *Nixon* test. At this stage, the Court cannot predict what documents would be produced in response to the trial subpoena and, therefore, is in no position to make a ruling on the relevancy or admissibility of those documents. The fact that the *Nixon* standard cannot be meaningfully applied to the subpoena at issue is further indication that the Supreme Court did not contemplate that a trial subpoena would be utilized by the government in the open-ended fashion that is attempted here. Because the trial subpoena does not meet the standards for relevancy, admissibility, or specificity set forth in *Nixon,* it must properly be quashed.

In sum, neither the grand jury subpoena nor the trial subpoena survives the motion to quash. With respect to the grand jury subpoena, the requested materials were properly

obtainable by the government, had it complied with the service requirements, which it failed to do. With respect to the trial subpoena, the materials were not, given their indeterminate nature, a permissible subject of a criminal trial subpoena. As a result, the Court grants the Law Firm's motion to quash both the grand jury subpoena and the trial subpoena. An appropriate Order will issue.