**UNITED STATES of America, Plaintiff,**

v.

**Douglas O. RUEDLINGER, Defendant.**

**No. 96–40045–SAC.**

United States District Court,
D. Kansas.

March 26, 1997.

Richard F. Hayse, Morris, Laing, Evans, Brock & Kennedy, Chtd., Topeka, KS, for Gregory L. Smart, Movant.

James M. Yeretsky, Yeretsky & Maher, L.L.C., Kansas City, MO, for Douglas O. Ruedlinger, Defendant.

Richard L. Hathaway, Office of U.S. Atty., Topeka, KS, for U.S.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

Trial in this case commenced on March 10, 1997. The second superseding indictment charges Douglas Ruedlinger with ten counts of mail fraud, two counts of wire fraud, and five counts of money laundering.[1] The second superseding indictment alleges that between 1984 and 1993 the defendant used his insurance related companies to engage in a scheme to defraud, essentially using incoming insurance premiums to pay past and cur-

---

1. An eighteenth count which seeks forfeiture of certain assets has been bifurcated.

rent obligations, instead of holding those funds in trust as he had agreed and promised. The agreement primarily at issue in this certain assets has been bifurcated. case is the "Partners in Protection Program" (PIP), a contract administered through one of Ruedlinger's subsidiary companies,[2] Fund Administrators Association (FAA). The alleged victims of the scheme to defraud were state athletic or activities associations who had voluntarily entered the PIP agreement. In an effort to lull his victims into believing that their reserves were safe, Ruedlinger allegedly mailed documents or made interstate telephone calls which contained false representations and promises regarding the actual existence and amounts of the reserves.

This case comes before the court upon the government's "Motion to Quash" (Dk. 88). In that motion, the government seeks to quash two subpoenas filed by the defendant. One subpoena commands Jerry Martens, a criminal investigator for the Internal Revenue Service (IRS), to bring "[a]ny and all audit reports prepared by the Internal Revenue Service pertaining to DRI (Doug Ruedlinger, Inc.) and/or Wheatland Group Holdings, Inc. during the 1990's time period." The other subpoena instructs Rick Rindt, an agent employed by the Federal Bureau of Investigation who investigated the criminal acts of Greg Smart,[3] to bring his "investigation file pertaining to Greg Smart." The government contends that such records are not relevant nor discoverable. The government also contends that these subpoenas are merely an unauthorized fishing expedition by the defendant.

The defendant responds, arguing that because Greg Smart is a potential government witness [4] "any information that Agent Rindt gathered in the course of his investigation, with respect to the operation of Doug Ruedlinger, Inc. or the Wheatland Group Holdings, Inc., during his investigation is essential to" his defense. In regard to the IRS records, Ruedlinger argues that evidence regarding the numerous audits of his personal and business records conducted by that agency must "contain exculpatory evidence." "Again, it is impossible to delineate what, specifically, is within the possession of the Internal Revenue Service, but clearly, the IRS, through their agent, Jerry Martens, has had access to this information and the final audit reports are clearly *Brady* material, exculpatory and therefore, the government is duty bound to turn that information over to the defendant as well."

### Subpoena Duces Tecum

■ Rule 17(c) provides in pertinent part:

The court may direct that books, papers, documents or objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents or objects or portions thereof to be inspected by the parties and their attorneys.

A subpoena duces tecum under Rule 17(c) "was not intended to provide a means of discovery for criminal cases ... but to expedite the trial by providing a time and place *before* trial for the inspection of subpoenaed materials." *United States v. Nixon,* 418 U.S. 683, 698–99, 94 S.Ct. 3090, 3103, 41 L.Ed.2d 1039 (1974). "In other words, Rule 17(c) is not a discovery tool but offers compulsory process for securing specific, identifiable evidence for trial." *United States v. Jackson,* 155 F.R.D. 664, 667 (D.Kan.1994); *see United States v. King,* 164 F.R.D. 542, 546 (D.Kan.1996) ("Rule 17 was not intended to provide the defendant a mechanism by which to troll the waters of the seas otherwise undiscoverable material in the small hope

---

**2.** Ruedlinger was the sole shareholder and director of Wheatland Group Holdings. Wheatland Group Holding held all of the stock of Doug Ruedlinger, Inc. (DRI) as well as several other subsidiary companies.

**3.** Greg Smart was a former employee and chief executive officer of Doug Ruedlinger, Inc. (DRI). Smart also served as administrator of the FAA for several years. While employed at DRI,

Smart embezzled at least $220,000 from the company. In addition, Smart committed acts of bank fraud. Smart's illegal acts were not discovered until 1990. Smart was subsequently convicted of bank fraud and sentenced to a 26 month primary term of incarceration.

**4.** On March 25, 1997, the government rested without calling Smart as a witness.

that something beneficial might rise to the surface.").

■ For an order to issue requiring production before trial, the moving party must demonstrate:

(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*Nixon,* 418 U.S. at 699–700, 94 S.Ct. at 3103; *see also United States v. Gonzalez–Acosta,* 989 F.2d 384, 389 (10th Cir.1993). The Supreme Court in *Nixon* summarized the moving party's burden as clearing the three hurdles of relevancy, admissibility, and specificity. 418 U.S. at 700, 94 S.Ct. at 3103; *see United States v. Kalter,* 5 F.3d 1166, 1169 (8th Cir.1993) ("A subpoena duces tecum must be reasonable and specific, and the documents sought must be relevant."). It is left to the trial court's discretion to judge whether these hurdles have been cleared. *United States v. Eden,* 659 F.2d 1376, 1381 (9th Cir.1981), *cert. denied,* 455 U.S. 949, 102 S.Ct. 1450, 71 L.Ed.2d 663 (1982).

■ That the requested material is "potentially" relevant or admissible is not enough, for both tests must be satisfied when the evidence is sought. *United States v. Burger,* 773 F.Supp. 1419, 1425 (D.Kan.1991), *conviction aff'd. but remanded for resentencing,* 964 F.2d 1065 (10th Cir.1992). There must be a "sufficient likelihood" that the requested material is "relevant to the offenses charged in the indictment," *and* a "sufficient preliminary showing that [the requested material] contains evidence admissible with respect to the offenses charged." *Nixon,* 418 U.S. at 700, 94 S.Ct. at 3104. Conclusory allegations of relevance and admissibility are insufficient. *Burger,* 773 F.Supp. at 1425; *see United States v. Eden,* 659 F.2d at 1381.

■ "Specificity is the hurdle on which many subpoena requests stumble." *Jackson,* 155 F.R.D. at 667. "This requirement ensures that the subpoenas are used only to secure for trial certain documents or sharply defined groups of documents." *Id.* (citing *United States v. Crosland,* 821 F.Supp. 1123, 1129 (E.D.Va.1993)). It also serves to prevent the subpoena from being converted into a license for what the Supreme Court in *Bowman Dairy Co. v. United States,* 341 U.S. 214, 221, 71 S.Ct. 675, 679, 95 L.Ed. 879 (1951), decried as a "fishing expedition to see what may turn up." *See United States v. Hang,* 75 F.3d 1275, 1283 (8th Cir.1996) (Rule 17(c) subpoena cannot be issued on defendant's "mere hope" that the desired documents would produce favorable evidence); *United States v. Noriega,* 764 F.Supp. 1480, 1493 (S.D.Fla.1991) ("If the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused"). The specificity requirement provides the subpoenaed party or other party having standing with enough knowledge about what documents are being requested so as to lodge any objections on relevancy or admissibility. *See Black v. Sheraton Corp. of America,* 564 F.2d 531, 545 (D.C.Cir.1977).

■ In describing the documents, the subpoena must refer to specific documents or, at least, to specific kinds of documents. 2 Charles A. Wright, *Federal Practice and Procedure* § 275 at 159 (1982); *see United States v. McCollom,* 651 F.Supp. 1217 (N.D.Ill.), *aff'd,* 815 F.2d 1087 (7th Cir.1987). Requesting entire files instead of specific documents indicates a fishing expedition. *United States v. Reed,* 726 F.2d 570, 577 (9th Cir.), *cert. denied,* 469 U.S. 871, 105 S.Ct. 221, 83 L.Ed.2d 151 (1984). The specificity hurdle, however, cannot be cleared by simply naming the title of the document. *United States v. Arditti,* 955 F.2d 331, 345–46 (5th Cir.), *cert. denied,* 506 U.S. 998, 113 S.Ct. 597, 121 L.Ed.2d 534 (1992). The moving party must specify why the materials are wanted, what information is contained in the documents, and why those documents would

be relevant and admissible at trial. *See Arditti*, 955 F.2d at 345–46.

█ "Conjecture and speculation will not provide the lift to carry a movant over the three hurdles." *Jackson*, 155 F.R.D. at 668. Without detailed information on the requested documents, a court is only left "to speculate as to the specific nature of their contents and its relevance." *Arditti*, 955 F.2d at 346. In *Nixon*, the movant provided sworn testimony from the participants in the recorded conversations and supplied reasons from which rational inferences could be drawn on the relevance of the tapes. 418 U.S. at 700, 94 S.Ct. at 3103–04. Generally, courts conduct *in camera* reviews of the requested material to decide if the three hurdles are satisfied. *Arditti*, 955 F.2d at 347 (Goldberg, J., concurring). If the movant, however, fails to make a threshold showing of a specific demand for relevant and admissible material, then the court may deny the request without conducting an *in camera* review. *Id.* at 348.

█ In *United States v. Ausbrook*, No. 92–40064–01, 1993 WL 270506 (D.Kan., June 4, 1993), this court denied a defendant's request for subpoena duces tecum under circumstances somewhat similar to the defendant's request:

Without a way to determine the nature and substance of the requested documents, the court is left to guess what might turn up, what information might be found, what relevance it might have, and what admissibility issues might arise. Rule 17(c) does not operate on assumptions and conjecture. The court has no choice but to find that the defendant failed to carry his burden of making a sufficient preliminary showing for these subpoenas to issue and similarly has failed even to make a threshold showing necessary for an *in camera* review of the requested documents.

*Ausbrook*, 1993 WL 270506 at *4.

### Relationship Between Rule 16 and Rule 17(c)

Our analysis of this issue begins with *Bowman Dairy Co. v. United States*, 341 U.S. 214, 71 S.Ct. 675, 95 L.Ed. 879 (1951), which discusses the relationship between rule 16 and rule 17(c). There, the Court upheld an antitrust defendant's subpoena directing the government to produce documents, books, and objects it had obtained during the course of its investigation, even though such materials were not discoverable under rule 16. The district court held that the defendant might be able to obtain some such materials under rule 17(c), "as long as they are evidentiary." *Id.* at 219, 71 S.Ct. at 678. Although rule 17 extends to materials not subject to rule 16 discovery, it is not intended to provide an additional means of discovery. *Id.* at 220, 71 S.Ct. at 679. Every subpoena must be a "good faith effort ... to obtain evidence," and the district court may ensure that rule 17(c) is used only to that end through the court's power to quash or modify subpoenas. *Id.* at 219–20, 71 S.Ct. at 678–79.

*Arditti*, 955 F.2d at 345.

### Analysis

The court, having considered the briefs of the parties, grants the government's motion to quash both subpoenas. One need look no further than the defendant's own response to the government's motion to determine that the defendant's subpoenas are little more than a fishing expedition for something potentially useful. Clearly, such requests are inappropriate. Based upon the paucity of the defendant's descriptions of the documents he seeks, he does not clear any of the three hurdles of relevancy, admissibility, and specificity.

Notwithstanding this ruling, the court again reminds the government of its obligations under *Brady, Giglio* and Fed. R.Crim.P. 16.

IT IS THEREFORE ORDERED that the government's "Motion to Quash" (Dk. 88) is granted.