DECISION
The Providence Journal Company (Journal) and its reporters, Tracy Breton, Mike Stanton, W. Zachary Malinowski and David Herzog have moved to quash the subpoena duces tecum authorized by this court on September 8, 1998. The subpoena, requested by the State of Rhode Island pursuant to R.I.R. Crim. P. 17(c), seeks the following materials from the Journal and its reporters:
 ". . . any and all notes, tapes, statements, transcripts, diskettes, or any other means used to memorialize statements made by former Governor Edward D. DiPrete relating to the subject matter of indictment P1/94-1000AB from March 29, 1994 to the present, including but not limited to all interviews conducted in preparation for the Providence Journal series entitled Rhode Island on Trial beginning August 9, 1998."
On September 8, 1998, this court heard argument from the state as to why the subpoena should be issued. No counsel was present representing defendant Edward D. DiPrete and counsel for defendant Dennis L. DiPrete took no position on the states request for subpoena. In the absence of opposition to the state's motion, the court found that the subpoena generally met the requirements as outlined in State v. DiPrete, 698 A.2d 223 (R.I. 1997).
Howard A. Merten, counsel for the Journal and its reporters, was present at the hearing, having filed an objection to the issuance of a 17(c) subpoena in advance of the court's consideration of the motion. The state, having been noticed by the Journal, had no objection to immediate consideration by this Court of the Journal's motion to quash the subpoena duces tecum. Therefore, for reasons of judicial economy of time, this court proceeded to hear argument from the Journal. The crux of the argument made by the Journal's attorney was that the requested subpoena was over broad, over burdensome, and nonspecific. The Journal, in its argument, also raised First Amendment concerns.
 Rule 17(c)
Rhode Island Rule 17(c)[1] of the Superior Court Rules of Criminal Procedure provides for the "Production of Documentary Evidence and of Objects." The text of the rule states:
 "A subpoena may also command the person to whom it is directed to produce the books, papers, documents, or tangible things designated therein. The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive. The court may direct that books, papers, documents or objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents or objects or portions thereof to be inspected by the parties and their attorneys."
Unlike Rule 16 of the Superior Court Rules of Criminal Procedure which "regulate[s] the discovery by a defendant of evidence in possession of the prosecution and the discovery by the prosecution of evidence in [the] possession of the defendant," Rule 17(c) was in no way intended to provide a supplemental means of discovery. DiPrete, 698 A.2d at 225. The "chief innovation [of Rule 17(c)] was to expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials." Id. (quoting Bowman Dairy Co. v. United States,341 U.S. 214, 220, 71 S.Ct. 675, 679, 95 L.Ed 879, 885 (1951)). "`In other words, Rule 17(c) is not a discovery tool but offers compulsory process for securing specific, identifiable, evidence for trial.'" United States v. Ruedlinger, 172 F.R.D. 453, 455 (D. Kan. 1997) (quoting United States v. Jackson, 155 F.R.D. 664, 667 (D. Kan. 1994)). A subpoena which is "unreasonable or oppressive" may be quashed or modified. See R.I.R. Crim. P. 17(c). See alsoUnited States v. Nixon, 418 U.S. 683, 698, 94 S.Ct. 3090, 3103, 41 L.Ed.2d 1039, 1058 (1974).
In DiPrete, the Rhode Island Supreme Court articulated the standard for evaluating requests for issuance of subpoenas pursuant to Rule 17(c):
 "`[I]n order to require production [under rule 17(c)] prior to trial, the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general `fishing expedition.'" DiPrete, 698 A.2d at 225 (quoting Nixon,
94 S.Ct. at 3103.
Because the need for a subpoena often turns on the determination of issues of fact, enforcement of a pretrial subpoena is left within the discretion of the trial court. DiPrete, 698 A.2d at 225 (quoting Nixon, 94 S.Ct. at 3104).
In Nixon, the United States Supreme Court summarized the moving party's burden of proof as being able to clear three hurdles. Those hurdles being relevancy, admissibility, and specificity. Nixon, 94 S.Ct. at 3103; See also DiPrete, 698 A.2d at 226. To satisfy the element of relevancy, the moving party must show a "sufficient likelihood" that the materials requested are "relevant to the offenses charged in the indictment." Nixon,
94 S.Ct. at 3103 (citation omitted). "Mere speculation as to the content of documents is hardly a showing of relevance." UnitedStates v. Concemi, 957 F.2d 942, 949 (1st Cir. 1992). See alsoUnited States v. Gikas, 112 F.R.D. 198, 201 (D. Mass. 1986) (conclusory statements are insufficient to prove relevancy). To satisfy the admissibility prong, the moving party must make a "sufficient preliminary showing that . . . [the material sought] contains evidence [which is] admissible with respect to offenses charged in the indictment." Nixon, 94 S.Ct. at 3104. As a general rule, impeachment evidence is not sufficient to require production prior to trial. Id. (citation omitted). Courts have, however, upheld subpoenas seeking impeachment materials recognizing that the determination of this aspect is up to the discretion of the court. United States v. LaRouche Campaign,841 F.2d 1176, 1180 (1st Cir. 1988).
To satisfy the final element, specificity, the moving party must refer to specific documents, or at least be able to designate with "reasonable particularity" the types of documents being sought. 2 Charles A. Wright, Federal Practice and Procedure, § 275 at 159 (1982). "The specificity requirement provides the subpoenaed party or other party having standing with enough knowledge about what documents are being requested so as to lodge any objections on relevancy or admissibility." UnitedStates v. King, 164 F.R.D. 542, 545 (D. Kansas 1996) (citingBlack v. Sheraton Corp. of America, 564 F.2d 531, 545 (D.C. Cir. 1977). A subpoena which neglects to describe any specific documents is over broad. 2 Wright, supra at 159.
In granting the state's motion pursuant to Rule 17(c) of the Rhode Island Rules of Criminal Procedure, the court applied the test enunciated in DiPrete, supra. The documents, sought by description and averment by the state, are statements purported to have been made by the defendant Edward D. DiPrete and, as such, would appear to be evidentiary and relevant to the criminal case at bar. The statements, because they are made by a defendant in a criminal case, are not reasonably procurable in advance of trial by any means other than by a 17(c) subpoena.
The third and fourth elements of the DiPrete test are, respectively, that the party seeking the information requested cannot properly prepare for trial without production and inspection in advance of trial and that the application for the 17(c) motion is made in good faith and is not intended as a general "fishing expedition." After hearing argument by the state and the Journal, and reviewing the rule and case law provided, the court in exercise of its discretion, will allow the state to issue a subpoena, albeit, in modified form.
It its original and complete form, the court finds that the state's application for a 17(c) subpoena duces tecum is, on its face, patently over broad, oppressive,[2] and characteristic of a Rule 16 "discovery device." Also, the subpoena is clearly speculative and lacks the specificity necessary and crucial to the issuance of a Rule 17(c) subpoena. With the exception of specific references to two incidents printed in the August 9, 1998 article, the state makes no attempt to indicate what information it expects to find in the materials gathered from the March 29, 1994 indictment to the present. Additionally, the state has not shown why these "unspecified" materials are crucial to the preparation for trial and will avoid unreasonable delay. For this reason, this court will modify the subpoena, limiting the state to the notes, tapes, statements, transcripts, diskettes, or any other means used to memorialize statements made by the defendant Edward D. DiPrete which relate to two specific episodes, one regarding witness Frank Zaino and one regarding a trip to Atlantic City, discussed in the August 9, 1998 segment of the Providence Journal's series Rhode Island On Trial.
The case law clearly differentiates between a discovery motion pursuant to Rule 16 and a Rule 17(c) subpoena. SeeDiPrete, 698 A.2d at 225; Bowman, 71 S.Ct. at 678-79. It is the belief of this court that modifying the subpoena will serve to promote the true purpose and spirit of R.I. R. Crim. P. 17(c) and prevent the rule from becoming a "discovery device." See DiPrete,
698 A.2d at 227. As stated in King, "Rule 17 was not intended to provide the defendant a mechanism by which to troll the waters of the sea's otherwise undiscoverable material in the small hope that something beneficial might rise to the surface." King, 164 F.R.D. at 546.
 First Amendment
Having dealt with the 17(c) issue, the court now addresses the First Amendment concerns articulated by the Journal. The appropriate starting point for any issue involving a First Amendment news reporters' privilege[3] is Branzburg v. Hayes,408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). In Branzburg,
the United States Supreme Court held that requiring newsmen to appear and testify before a grand jury did not violate the freedoms of speech and press guaranteed by the First Amendment.Id. at 2649-50. The Supreme Court declined the invitation to "grant newsmen a testimonial privilege that other citizens do not enjoy." Id. at 2661.
Perhaps the most salient portion of the Branzburg decision was the concurrence written by Justice Powell. In his concurring opinion, Justice Powell wrote:
 "The asserted claim to privilege should be judged on its facts by the striking of a proper balance between freedom of the press and the obligation of all citizens to give relevant testimony with respect to criminal conduct. The balance of these vital constitutional and societal interests on a case-by-case basis accords with the tried and traditional way of adjudicating such questions." Id. at 2671
 (Powell, J., concurring).
Although some courts have construed this concurrence as a mandate to create a qualified newsmans' privilege in criminal cases, Seee.g., LaRouche, 841 F.2d at 1182, the Rhode Island Supreme Court, however, has stated in Outlet Communications Inc. v. State,588 A.2d 1050 (R.I. 1991):
 "`Our reading of Branzburg, together with Herbert v. Lando, 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979), leads us to the conclusion that the Supreme Court of the United States has rejected the proposition that there is a First Amendment privilege accorded to news person to refuse to disclose information, confidential or otherwise, which is necessary to the determination of a litigated case.'" Outlet, 588 A.2d at 1052 (quoting Capuano v. Outlet Co., 579 A.2d 469 (R.I. 1990).
In Outlet, our state Supreme Court held that a television station had no First Amendment privilege to refuse to comply with a grand jury subpoena which sought unpublished portions of a non-confidential videotaped interview. Outlet, 588 A.2d at 1051. The videotaped interview was conducted with an individual wanted in association with an ongoing grand jury investigation. Id. Seealso In re Letellier, 578 A.2d 722 (Me. 1990) (television news reporter had no First Amendment privilege to refuse to comply with grand jury subpoena requiring him to hand over unbroadcast portions of a non-confidential videotaped interview with an official under criminal investigation).
Furthermore, quite recently in United States v. Smith,135 F.3d 963 (5th Cir. 1998), the Fifth Circuit refused to recognize a qualified First Amendment privilege for news reporters to withhold non-confidential information in criminal cases. Id. at 972. Recognizing that the "press here is not differently situated from any other business that may find itself possessing evidence relevant to a criminal trial," the court required a television station to produce unbroadcast portions of a videotaped interview conducted with an arson defendant. Id. at 970.
In conclusion, this court holds that the materials ordered to be produced do not present any First Amendment concerns. As such, the state may issue a subpoena duces tecum for any notes, tapes, statements, transcripts, diskettes, or any other means used to memorialize statements made by the defendant, Edward D. DiPrete given to representatives of the Journal which relate only to two specific episodes in the August 9, 1998 article. That is, pertaining to witness Frank Zaino and any information given by the defendant regarding a trip to Atlantic City while the defendant was Mayor of Cranston. The subpoena shall request the aforementioned information gathered by the Journal representatives whether published or not published in the August 9, 1998 article.
[1] R.I. R. Crim. P. 17(c) is virtually identical to its federal counterpart. For this reason the Rhode Island Supreme Court has looked to interpretations of the federal rules for guidance when interpreting its own state rules. See DiPrete, 698 A.2d at 225.
[2] See affidavit of Linda Henderson at para. 3-6, 9-10, librarian for the Journal, which states inter alia:
"3. The Providence Journal maintains a computerized database of its articles. The database includes all articles from March 29, 1994 to the present.
4. There is no means available to search specifically for which articles might contain quotes or statements from a particular individual via computer.
5. To determine which articles might contain such statements, which in turn would allow us to ascertain what reporter notes, memoranda or the like might exist, we would have to conduct a free-text computer search for articles discussing the DiPrete indictment. This is not an exact science. In turn, once we identified any responsive article, we would have to read them one at a time to determine whether they contain any potentially responsive statements.
6. The Providence Journal has written hundreds of articles mentioning the DiPrete indictment. Just one search on the computerized database for the terms "DiPrete" and "crime" retrieved a total of 178 articles since March 1994 — 38 in 1998, 93 for the years 1996 and 1997, and 47 for the years 1994 and 1995. (The term "crime" is a word which the Providence Journal adds to the database as an "enhancement" to assist it in later searches.)
 . . .
9. Once I completed this project, the reporters involved in any stories containing possible comments from former Governor DiPrete would then have to search for the relevant notes.
10. The search discussed in paragraph 6 identified twenty-five reporters and columnists. Some of those reporters are no longer employed by the Providence Journal."
[3] Rhode Island has adopted a statutory Newsman's Privilege.See R.I.G.L. § 9-19.1-1 et seq. Upon being questioned by the court, the Providence Journal declined to assert the statutory protection provided by the Rhode Island Newsman's Privilege Act. The statutory Newsman's Privilege Act reads in part:
 "9-19.1-2. Nondisclosure of confidential information.
 Except as provided in 9-19.1.3, no person shall be required by any court, grand jury, agency, department, or commission of the state to reveal confidential association, to disclose any confidential information, or to disclose the source of any confidential information received or obtained by him or her in his or her capacity as a reporter, editor commentator, journalist, writer, correspondent, news photographer or other person directly engaged in the gathering or presentation of news for any accredited newspaper, periodical, press association, newspaper syndicate, wire service, or radio or television station."
 9-19.1-3. Qualifications.
 (a) The privilege conferred by § 9-19.1.2 shall not apply to any information which has at any time been published, broadcast, or otherwise made public by the person claiming the privilege.
 (b) The privilege conferred by § 9-19.1-2 shall not apply:
 (1) To the source of any allegedly defamatory information in any case where the defendant, in a civil action for defamation, asserts a defense based on the source of the information; or
 (2) To the source of any information concerning the details of any grand jury or other proceeding which was required to be secret under the laws of the state.
 (c) In any case where a person claims a privilege conferred by this statute, the person seeking the information or the source of the information may apply to the superior court for an order divesting the privilege. If the court, after hearing the parties, shall find that there is substantial evidence that disclosure of the information or of the source of the information is necessary to permit a criminal prosecution for the commission of a specific felony, or to prevent a threat to human life, and that the information or the source of the information is not available from other prospective witnesses, the court may make such order as may be proper under the circumstance. Any such order shall be appealable under the provisions of chapter 24 of title 9.