#27069-a-DG
**2014 S.D. 90**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

DEADWOOD STAGE RUN, LLC,                          Plaintiff and Appellant,

        v.

SOUTH DAKOTA DEPARTMENT
OF REVENUE and ANDY GERLACH,
in his individual capacity and in his
official capacity as Secretary of Revenue,          Defendants and Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE MARK BARNETT
Judge
\* \* \* \*

MICHAEL F. MARLOW
BETH A. ROESLER of
Johnson, Miner, Marlow,
  Woodward & Huff, Prof., LLP
Yankton, South Dakota                   Attorneys for plaintiff and
                                        appellant.


MARTY J. JACKLEY
Attorney General

MATTHEW NAASZ
Assistant Attorney General
Pierre, South Dakota

ANDREW L. FERGEL
STACY R. HEGGE of
South Dakota Department
  of Revenue
Pierre, South Dakota                    Attorneys for defendants and
                                        appellees.

\* \* \* \*

                                        CONSIDERED ON BRIEFS
                                        ON NOVEMBER 17, 2014
                                        OPINION FILED **12/17/14**

GILBERTSON, Chief Justice

[¶1.] Appellant, Deadwood Stage Run, LLC (the Developer), appeals the Sixth Judicial Circuit Court's denial of its motion for summary judgment and that court's granting of the same to Appellee, the South Dakota Department of Revenue (the Department). The Developer argues the Department incorrectly calculated the tax incremental base for Tax Incremental District Number Eight (the District) in the City of Deadwood (the City) by using Lawrence County's (the County) November 1, 2006 annual assessment, rather than the Department's August 25, 2006 annual Certificate of Assessment, Equalization, and Levy. The Developer asks this Court to reverse the circuit court's summary judgment in favor of the Department and to direct the court to enter summary judgment in favor of the Developer. We affirm.

## Facts and Procedural History

[¶2.] The facts of this case are not in dispute.[1] On February 15, 2006, Steve Slowey, Wayne Ibarolle, William Pearson, and Clayton Johnson purchased real property located in Lawrence County, South Dakota,[2] from John Nick Heinen,

---

1. The parties filed Stipulated Facts and Evidence on July 25, 2013, and agree that there are no disputed issues of material fact.

2. The legal description of the transferred property is:
   Tracts G, H, I, J, K, and L of Mineral Survey No. 696, Palisades Stone Placer, Lawrence County, South Dakota, according to Plat Document No. 84-2419; and

   The unplatted remainder of Palisades Stone Placer of Mineral Survey No. 696, Lawrence County, South Dakota; and

   Tracts E and F of Mineral Survey No. 696 Palisades Stone Placer, Lawrence County, South Dakota, according to Plat Document No. 81-2887.

Jackie Heinen, Douglass M. Mergen, and Tammy Hollenbeck for the amount of $1,000,000. At some point during the subsequent two-week period, but prior to March 1, 2006, the purchasers received an assessment notice from the County. The assessment classified the property as agricultural, valued the land at $13,070, and valued improvements on the land at $9,560. The total assessed value of $22,630 represented the value of the property as of November 1, 2005, as required by SDCL 10-6-2.[3] Shortly thereafter, in April 2006, Slowey, Ibarolle, Pearson, and Johnson transferred the property to the Developer—a limited liability company owned by Slowey, Ibarolle, Pearson, and Johnson, with a principal place of business in Deadwood, South Dakota—by a quit claim deed.

[¶3.] On August 25, 2006, the Department issued a Certificate of Assessment, Equalization and Levy for 2007 showing the equalized valuation of all property located in Lawrence County assessed by the secretary of revenue, as required by SDCL 10-11-51. Per SDCL 10-6-2, the County again assessed the property at issue according to its value as of November 1, 2006. Because the purchase price of $1,000,000 was more than 150% of $22,630—the assessed value of the property at the time of sale—the County assessed the property's value at

---

3.     SDCL 10-6-2 states: "All real property subject to taxation shall be listed and assessed annually, but the value of such property is to be determined according to its value on the first day of November preceding the assessment."

$934,520.[4] The assessed value of the land increased from $13,070 to $924,960, but the assessed value of the improvements to the land remained $9,560.

[¶4.] On December 18, 2006, the City passed Resolution No. 2006-44, creating the District out of the property at issue here. On January 29, 2007, the City and the Developer entered into a "Contract for Private Development" of the District. Sometime thereafter, but prior to March 1, 2007, the County sent its 2007 assessment of the property to the developer reflecting the November 1, 2006 assessed value of $934,520. The City and the Developer amended the project plan on July 23, 2007. However, in the amended contract, the City and the Developer continued to agree that the assessed value of the property in the District was $15,800,[5] rather than the County's most recent assessment of $934,520. On August 27, 2007, the Department sent a new Certificate of Assessment, Equalization and Levy for 2007 to the County.

[¶5.] On October 16, 2007, the City's finance officer sent a written request to the Department to certify the tax incremental base valuation of the District. The City stated that the County's assessed valuation of the property in the District was $15,370 on the date the District was created and asked the Department to verify

---

4.  The cumulative effect of SDCL 10-6-33.14 and SDCL 10-6-33.18 is such that any agricultural land that sells for more than 150% of its assessed value is reclassified as a nonagricultural acreage and, for ad valorem tax purposes, is valued at the sale price multiplied by the county's level of assessment for nonagricultural property.

5.  In its brief to this Court, the Developer recognized that two parcels were initially omitted from the City's and the Developer's valuation and that $22,630 is the correct assessed valuation for the property in the District in 2006.

that amount as the District's tax incremental base. The Department responded to the City's request on November 16, 2007, certifying the aggregate assessed value of the District to be $924,960 for the land and $9,560 for improvements to the land—the values determined from the County's 2007 assessed valuation of the property.

[¶6.] The Developer sought a declaratory judgment prospectively establishing the 2006 assessed valuation of the District as the appropriate tax incremental base rather than the 2007 assessed valuation. The Developer and the Department filed cross motions for summary judgment. The circuit court denied the Developer's motion and granted the Department's. The Developer raises one issue in this appeal:

> 1. Whether, in calculating the tax incremental base for a tax incremental district, SDCL chapter 11-9 requires the Department to use the last aggregate assessed valuation certified by the Department prior to the date of creation of the tax incremental district.

**Standard of Review**

[¶7.] When we review a circuit court's grant or denial of summary judgment, "we determine whether the moving party has demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law." *Dykstra v. Page Holding Co.*, 2009 S.D. 38, ¶ 23, 766 N.W.2d 491, 496 (quoting *Cowan Bros., LLC v. Am. State Bank*, 2007 S.D. 131, ¶ 12, 743 N.W.2d 411, 416). However, because "[t]he parties stipulated to the facts[,] . . . our review [in this case] is limited to determining whether the trial court correctly applied the law." *Econ. Aero Club, Inc. v. Avemco Ins. Co.*, 540 N.W.2d 644, 645 (S.D. 1995). "Questions of statutory interpretation and application are reviewed under the de

novo standard of review with no deference to the circuit court's decision." *Argus Leader v. Hagen*, 2007 S.D. 96, ¶ 7, 739 N.W.2d 475, 478.

## Analysis and Decision

[¶8.]     The South Dakota Legislature authorized the creation of tax incremental districts in 1978. 1978 S.D. Sess. Laws ch. 91. "The basic purpose of statutes authorizing the creation of tax incremental districts is to enable the increased tax revenues generated by community redevelopment projects to be placed in a special fund for the purpose of repaying the public costs of the projects." *Meierhenry v. City of Huron*, 354 N.W.2d 171, 175 (S.D. 1984). The mechanism for achieving this purpose is relatively simple. First, after a tax incremental district is created by a municipality, the Department determines the tax incremental base for that district. SDCL 11-9-12. The tax incremental base is the aggregate assessed valuation of all property in the district at the time of its creation. SDCL 11-9-19. Next, while property taxes are assessed yearly on property located within the district, any political subdivision of the State possessing the power to levy taxes on the district is permitted to retain tax revenue based solely on the value of the tax incremental base, rather than the full amount of the year-to-year assessments. SDCL 11-9-27. Finally, as development in the tax incremental district progresses, and the assessed valuation of the district increases over time, any positive difference between the assessed valuation in any given year and the tax incremental base of the district is called a positive tax increment and is allocated to the municipality that created the district to pay for public project costs. SDCL 11-9-25.

[¶9.] The issue before us today is one of timing and focuses on the proper determination of the tax incremental base of the District. The Developer argues that the plain language of SDCL 11-9-19 and SDCL 11-9-20 requires the Department to calculate the tax incremental base using valuations assessed prior to the creation of the District. The Developer further argues that, in certifying the tax incremental base at $934,520, the Department "frustrate[d] the clear intent of the legislature[]" and "deprived Developer of the benefit intended and expressed by the legislature." For its part, the Department asserts that it does not typically certify valuations of specific parcels; therefore, the requirement in SDCL 11-9-20 to use the valuations "as last previously certified by the department" is "unworkable." Consequently, the Department urges us to examine the legislative intent and conclude that the Department properly used the County's 2007 assessed valuation of the property in the District in determining the District's tax incremental base. We disagree with the Department that SDCL 11-9-20 is unworkable. However, we conclude that the plain meaning of SDCL chapter 11-9 indicates that the circuit court's granting of summary judgment in favor of the Department was proper.

[¶10.] In arguing that the Department must use the last certified valuation assessed prior to the creation of the district, the Developer relies on two specific phrases. According to SDCL 11-9-19, "A 'tax incremental base' is the aggregate assessed value of all taxable property located within a tax incremental district *on the date the district is created*, as determined by § 11-9-20." (Emphasis added.) SDCL 11-9-20, in turn, states:

> Upon application in writing by the municipal finance officer, on
> a form prescribed by the Department of Revenue, the

> department shall determine the aggregate assessed value of the taxable property in the district, which aggregate assessed valuation, upon certification to the finance officer shall constitute the tax incremental base of the district. Except as provided for in § 11-9-20.1, *the department shall use the valuations as last previously certified by the department* adjusted for the value to the date the district was created for any buildings or additions completed or removed and without regard to any reduction pursuant to §§ 1-19A-20, 10-6-35.2, 10-6-35.21, and 10-6-35.22.

(Emphasis added.) According to the Developer, the last valuation that the Department certified was the County's 2006 assessed valuation of the District of $22,630, when the Department issued its Certificate of Assessment, Equalization and Levy in August 2006, pursuant to SDCL 10-11-51. According to the Developer, SDCL 10-11-51 is "the only statutory reference requiring property value certification by the Department[.]" Therefore, the Developer concludes, the Department was statutorily required to again certify that same amount when the City made its written request to the Department to certify the District's tax incremental base in October 2007.

[¶11.]     As an initial matter, the Developer is clearly mistaken that SDCL 10-11-51 is the only statute that refers to property value "certification." The plain language of SDCL 11-9-20 indicates that, in answering a municipal finance officer's request for the determination of a tax incremental base, the Department's response constitutes a certification. More importantly, as the circuit court and the Department have pointed out, the Department's annual certificates of assessment, equalization and levy only specify "the percent added to or deducted from the valuation of each class of real property" in the county, as well as the aggregate, equalized valuation of property in the county; the annual certificates do not include

-7-

individually assessed valuations for the property located specifically in the District. Furthermore, we see nothing—and the Developer offers no authority—establishing that the word "certification" is a term of art. The South Dakota Legislature has said, "Words used are to be understood in their ordinary sense . . . ." SDCL 2-14-1. *See also Argus Leader,* 2007 S.D. 96, ¶ 13, 739 N.W.2d at 480 ("Words and phrases in a statute must be given their plain meaning and effect.") The word "certify" simply means: "To attest as being true or as represented." *Black's Law Dictionary* 207 (5th ed. 1979). In this regard, SDCL 11-9-20 merely requires the Department to formally declare, in writing, that the tax incremental base it reports to the municipal finance officer is true; it does not require that the value reported be derived by operation of some other statute specifically calling for a "certification."

[¶12.]     Furthermore, we are convinced that the phrase in SDCL 11-9-19 most relevant to the present dispute is not "on the date the district is created," but rather is "as determined by § 11-9-20." It is SDCL 11-9-20 that provides the guidelines for determining the proper tax incremental base; SDCL 11-9-19 serves as a definitional statute. The value certified under SDCL 11-9-20, when calculated according to the dictates of that statute, *is* by definition the assessed value of the tax incremental district on the date of its creation. In other words, SDCL 11-9-19 provides the label, while SDCL 11-9-20 provides the valuation. Contrary to the Developer's argument, SDCL 11-9-19 does not, in itself, affect the calculation of the tax incremental base.

[¶13.]     As for SDCL 11-9-20, the Developer and the Department both misinterpret the phrase "the department shall use the valuations as last previously certified by the department[.]" Upon a careful reading of the entire second sentence

of SDCL 11-9-20, and considering that statute in the context of other sections in chapter 11-9, the plain meaning of that sentence indicates that it applies only to improvements upon land located within a tax incremental district, not the land itself. First, the second sentence of SDCL 11-9-20 contains several restrictive clauses that operate on the word "valuations." The phrases "as last previously certified[,]" "adjusted for the value to the date the district was created[,]" and "for any buildings or additions completed or removed" all define subsets of the entire set of "valuations." Because these clauses are restrictive, the second sentence of SDCL 11-9-20 contemplates the *intersection* of these subsets. In other words, the only "last previously certified" valuation that the Department is required to use—according to the second sentence of SDCL 11-9-20—is one "for any buildings or additions completed or removed" *and* one that has been "adjusted for the value to the date the district was created[.]"

[¶14.] Second, the other statutes referenced in the second sentence of SDCL 11-9-20 support the conclusion that the phrase "last previously certified" refers only to improvements on the land. The end of SDCL 11-9-20 references SDCL 1-19A-20, 10-6-35.2, 10-6-35.21, and 10-6-35.22. SDCL 1-19A-20 places "a moratorium on the taxation of increased valuation due to restoration or rehabilitation of real estate placed on the State Register of Historic Places[.]" SDCL 10-6-35.2 permits a county to assess the value of a newly constructed building at a reduced rate for five years following the completion of construction. It also permits a county to assess the value of—and tax—a partially completed structure. SDCL 10-6-35.21 specifically classifies any "new nonresidential agricultural *structure*, or addition to an existing

*structure*," worth more than $10,000 for the purpose of taxation. (Emphasis added.) SDCL 10-6-35.22 does the same for all "industrial or commercial *structures* or additions, renovation, or reconstruction to existing *structures*" worth more than $30,000. (Emphasis added.) Thus, SDCL 10-6-35.2, 10-6-35.21, and 10-6-35.22 exclusively relate to the valuation of improvements, not land. SDCL 1-19A-20, while not necessarily restricted only to structures, predominantly pertains to structures and is, consequently, consistent with our reading of SDCL 11-9-20.

[¶15.]     Third, this reading of SDCL 11-9-20 harmonizes with other statutes in chapter 11-9. SDCL 11-9-23, for example, states in part: "If the municipality adopts an amendment to the original project plan for any district, which includes additional project costs for which tax increments may be received by the municipality, the tax incremental base for the district shall be redetermined pursuant to § 11-9-20 . . . ." However, as discussed above, the Developer's interpretation of SDCL 11-9-20 would always require the Department to use the last valuation certified by the Department previous to the creation of the tax incremental district. Such an interpretation renders SDCL 11-9-23 without meaning—once the district has been created, the result of any recalculation pursuant to that section would necessarily result in the same valuation. Under our interpretation of SDCL 11-9-20, however, a subsequent determination of a district's value could produce a result different than the initial valuation—as is apparently intended by the existence of SDCL 11-9-23. Therefore we must also reject the Developer's view because "we assume no part of the statutory scheme was intended

to be 'mere surplusage.'" *Double Diamond Constr. v. Farmers Coop. Elevator Ass'n of Beresford*, 2003 S.D. 9, ¶ 7, 656 N.W.2d 744, 746 (per curiam).

[¶16.]     The Developer is correct in stating that "[t]he original [tax incremental] base is intended to be determined before the undertaking of projects within the district[] and reflects what the value of the district would have been without the project improvements." The Developer is wrong, however, in its implication that the difference between the County's 2006 and 2007 assessed valuations is the result of development. Its argument that the 2007 assessment may have occurred after the creation of the District is similarly unconvincing. Regardless of when that assessment occurred, the valuation of the District reported in the County's 2007 assessed valuation represents the value of the District on November 1, 2006. In this case, the disparity between the 2006 and 2007 assessed valuations apparently results from the sale price of the property and the operation of SDCL 10-6-33.14 and SDCL 10-6-33.18, not any increase in assessed value as the result of development the Developer might have undertaken.

[¶17.]     Further, any increased valuation that might have resulted from development (although we see no indication of such in the record) would not have been lost had the City immediately requested a certification from the Department— pursuant to SDCL 11-9-12 and SDCL 11-9-20—rather than waiting nine months to do so. SDCL 11-9-12 commands, "*Upon the creation of a tax incremental district* or adoption of any amendment . . . , its tax incremental base *shall* be determined as provided in §§ 11-9-20 to 11-9-25, inclusive." (Emphasis added.) In the South Dakota Codified Laws, the word "shall" "manifests a mandatory directive and does

not confer any discretion in carrying out the action so directed." SDCL 2-14-2.1. However, as noted above, SDCL 11-9-20 begins with the phrase, "[u]pon application in writing by the municipal finance officer[.]" Thus, if SDCL 11-9-12 commands the determination of a tax incremental district's tax incremental base upon creation of the district, but the municipal finance officer's request for certification actually triggers the Department's responsibility to determine the district's assessed valuation, then SDCL 11-9-12 and 11-9-20—read together—seem to require a municipality that creates a tax incremental district to not unreasonably delay its request to the Department for the certified aggregate assessed value of the taxable property within the district.

[¶18.]	Applying the foregoing, we examine the assessed valuation of the land separate from the improvements to the land. The Department's duty to calculate the District's tax incremental base did not trigger until the City requested the Department certify the same. Nothing in SDCL 11-9-19 or SDCL 11-9-20 required the Department to use the County's 2006 assessed valuation for land located within the District; SDCL 11-9-20 required only that the Department adjust the assessed valuation of the property to take into account the completion or removal of structures in the District from the date of the District's creation. However, the improvements component of the County's 2006 and 2007 assessments did not change—each reported that improvements in the District were valued at $9,560. Therefore the Department's final certified assessed valuation of $934,520 was not erroneous.

**Conclusion**

[¶19.]     The Department was not required to use the County's 2006 assessed valuation of the land located within the District.  Because the second sentence of SDCL 11-9-20 applies only to the improvements in the District, and the value of those improvements on the date of the District's creation was the same as that reflected in the County's 2007 assessment, the Department correctly determined the tax incremental base for the District.  Consequently, we affirm.

[¶20.]     KONENKAMP, ZINTER, SEVERSON, and WILBUR, Justices, concur.