#27341-r-JMK
**2016 S.D. 56**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

MINNEHAHA COUNTY SHERIFF
MIKE MILSTEAD,                                          Appellant,

    and

STATE OF SOUTH DAKOTA,                                  Appellant,

    v.

JOSEPH PATRICK JOHNSON,                                 Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA
* * * *
THE HONORABLE SUSAN M. SABERS
Judge
* * * *

SARA E. SHOW
KERSTEN A. KAPPMEYER
Minnehaha County State's
  Attorney's Office
Sioux Falls, South Dakota          Attorneys for appellant
                                   Minnehaha County Sheriff
                                   Mike Milbstead.

AARON MCGOWAN
Minnehaha County State's Attorney

MATTHEW J. ABEL
Minnehaha County
  Deputy State's Attorney
Sioux Falls, South Dakota          Attorneys for appellant State of
                                   South Dakota.

BEAU J. BLOUIN
Minnehaha County
  Public Defender's Office
Sioux Falls, South Dakota          Attorneys for appellee Joseph
                                   Patrick Johnson.

* * * *

CONSIDERED ON BRIEFS ON
OCTOBER 5, 2015
OPINION FILED **07/27/16**

#27341

KERN, Justice

[¶1.]     Defendant was arrested and charged with several offenses, including two counts of simple assault against a law enforcement officer.  Defendant served a subpoena duces tecum on the county sheriff requesting "[a]ll disciplinary records/reports, disciplinary actions or complaints" contained within the personnel files of three Minnehaha County Sheriff Department detectives.  The sheriff filed a motion to quash the subpoena, which the circuit court denied in part.  The court ordered the sheriff to produce, for in camera review, complaints against one of the officers "for excessive force or aggression," "[d]isciplinary records involving the incident for which the Defendant is charged with in this case," and "[d]isciplinary actions taken against any of the three officers because of this matter."  We granted the sheriff's petition for an intermediate appeal from the circuit court's order.  We reverse.

## Background

[¶2.]     On April 30, 2014, Minnehaha County Detectives Joe Bosman, Craig Butler, and Ryan Qualseth arrested Joseph Patrick Johnson on a misdemeanor child-support warrant.  He was later indicted for several offenses, including two counts of simple assault against a law enforcement officer (Detective Qualseth).  Detective Qualseth was the only detective involved in the physical altercation with Johnson.  On September 5, 2014, Johnson served a subpoena duces tecum on Minnehaha County Sheriff Mike Milstead requesting production of "[a]ll disciplinary records/reports, disciplinary actions or complaints made against the

-1-

following Minnehaha County Sheriff Department's employees: Detective Joe Bosman, Detective Craig Butler, and Detective Ryan Qualseth."[1]

[¶3.]    On November 19, 2014, Sheriff Milstead filed a motion to quash the subpoena, arguing it was "unreasonable and oppressive." The court held a motions hearing on December 3, 2014. A Minnehaha County deputy state's attorney from the civil division represented Sheriff Milstead and a deputy state's attorney from the criminal division represented the State. Johnson argued that access to the requested records was necessary for effective cross-examination under the Sixth Amendment of the United States Constitution in order to present his theory of the case. Johnson informed the court that he was not claiming that he acted in self-defense. Rather, he contended that Detective Qualseth used excessive force against

---

1.    Johnson also filed a motion to compel the production of discovery material under *Brady v. Maryland*. 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). *Brady* established a duty to produce to a defendant "evidence [that] is material either to [his or her] guilt or to punishment." *Id.* at 87, 83 S. Ct. at 1197. This duty includes the disclosure of material evidence affecting the credibility of a witness "[w]hen the 'reliability of a given witness may well be determinative of guilt or innocence.'" *Giglio v. United States*, 405 U.S. 150, 154, 92 S. Ct. 763, 766, 31 L. Ed. 2d 104 (1972) (quoting *Napue v. Illinois*, 360 U.S. 264, 269, 79 S. Ct. 1173, 1177, 3 L. Ed. 2d 1217 (1959)). Evidence is material for purposes of *Brady* only if there is a reasonable probability that the result of the proceeding would have been different if the material was disclosed to the defense. *United States v. Bagley*, 473 U.S. 667, 682, 105 S. Ct. 3375, 3383, 87 L. Ed. 2d 481 (1985). Although the State and Sheriff Milstead argued *Brady* did not apply to the records, they informed the court that all exculpatory information in the possession of the State or the Sheriff, including any information relating to the characters of the deputies for truthfulness, had been disclosed to Johnson. At a subsequent motions hearing the circuit court denied the motion. Regardless, Johnson did not file a notice of review from the denial of the court's motion; therefore, we do not address whether the personnel files of law enforcement officers are discoverable under *Brady*.

him during his arrest and that Detective Qualseth was the aggressor. Johnson denied assaulting the officers. In response to the discovery request, Sheriff Milstead argued that the subpoena, in addition to being unreasonable and oppressive was nothing more than a "fishing expedition." He further asserted that the requested documents, even if produced, would be irrelevant and inadmissible under the rules of evidence. In response, Johnson argued that relevancy is a question to be determined at trial.

[¶4.] The circuit court denied in part Sheriff Milstead's motion to quash the subpoena. The court ordered Sheriff Milstead to produce the following documents for in camera review: 1) "[c]omplaints against Detective Qualseth for excessive force or aggression[,]" 2) "disciplinary records involving the incident for which the Defendant is charged with in this case[,]" and 3) "[d]isciplinary actions taken against any of the three officers because of this matter." In addition to its oral findings of fact and conclusions of law, the circuit court entered written findings of fact, conclusions of law, and an order on January 20, 2015.

[¶5.] In February 2015 Sheriff Milstead petitioned this Court for an intermediate appeal from the circuit court's order. We granted the request on April 6, 2015. The State, through the Minnehaha County State's Attorney's Office, filed a brief in support of Sheriff Milstead's position.

[¶6.] On appeal, Sheriff Milstead raises two issues:

1.  Whether the circuit court erred in holding that a law enforcement officer's personnel file is discoverable under SDCL 23A-14-5 (Rule 17(c)).

2.  Whether the circuit court erred in ordering an in camera review of portions of the three detectives' personnel files.

## Standard of Review

[¶7.] Ordinarily, "[w]e review the [circuit] court's rulings on discovery matters under an abuse of discretion standard." *Anderson v. Keller*, 2007 S.D. 89, ¶ 5, 739 N.W.2d 35, 37. However, the question whether the circuit court erred when it interpreted SDCL 23A-14-5 to permit discovery raises a question of statutory interpretation and application, which we review de novo. *Deadwood Stage Run, LLC v. S.D. Dep't of Revenue*, 2014 S.D. 90, ¶ 7, 857 N.W.2d 606, 609.

## Analysis

> 1. *Whether the circuit court erred in holding that a law enforcement officer's personnel file is discoverable under SDCL 23A-14-5 (Rule 17(c)).*

[¶8.] The question whether a law enforcement officer's personnel records are subject to discovery in a criminal prosecution is a question of first impression before this Court.[2] Johnson contends that these records, although confidential, are relevant to the primary issue in this case: "whether Detective Qualseth, or Johnson,

---

2. Other jurisdictions addressed this question in earnest beginning as early as the 1970s. The jurisdictions passed legislation and developed jurisprudence related to the application of their statutory schemes. For a discussion on the plethora of issues regarding the production of personnel records and the approaches taken by varying state and federal jurisdictions, see Jeffrey F. Ghent, Annotation, *Accused's Right to Discovery or Inspection of Records of Prior Complaints Against, or Similar Personnel Records of, Peace Officer Involved in the Case,* 86 A.L.R.3d 1170 (1978), Jonathan Abel, *Brady's Blind Spot: Impeachment Evidence in Police Personnel Files & the Battle Splitting the Prosecution Team*, 67 Stan. L. Rev. 743 (2015), Lis Wiehl, *Keeping Files on the File Keepers: When Prosecutors are Forced to Turn Over the Personnel Files of Federal Agents to Defense Lawyers*, 72 Wash. L. Rev. 73 (1997).

was the true aggressor." Johnson asserts the records are necessary to present his defense and fully cross-examine the State's witnesses.

[¶9.]        South Dakota lacks detailed legislation specific to the production of law enforcement personnel records.[3] Accordingly, we look to statutes addressing personnel records generally and the constitutional principles involved in production of confidential materials. SDCL 1-27-1.1 broadly defines public records as including personnel records. Although public records are generally open to inspection and copying pursuant to SDCL 1-27-1.1, certain public records are not. These excluded records include "[p]ersonnel information other than salaries and routine directory information." SDCL 1-27-1.5(7).

[¶10.]        Although personnel records are statutorily protected, that protection is not absolute. A defendant has a fundamental right to proffer a defense. *State v. Huber*, 2010 S.D. 63, ¶ 37, 789 N.W.2d 283, 294. This includes the right to call

---

3.    Two of the nation's biggest jurisdictions—California and New York—have developed detailed bodies of legislation to govern this question. The Supreme Court of California in 1974 addressed the issue in *Pitchess v. Superior Court* authorizing the release of personnel records of law enforcement officers to civil litigants and criminal defendants. 522 P.2d 305, 311 (Cal. 1974). The California Legislature, in response to the opinion, defined personnel records, codified the privileges surrounding them, and set out detailed procedures for discovery of the records. *See, e.g.*, Cal. Penal Code § 832.7; Cal. Evid. Code §§ 1043–1045. For a summary of California's procedures, see *City of Santa Cruz v. Mun. Court*, 776 P.2d 222 (Cal. 1989), *Warrick v. Superior Court*, 112 P.3d 2 (Cal. 2005). Likewise, the State of New York has a statutory scheme in which the personnel files of police officers are confidential and not subject to disclosure except upon a specified showing by a criminal defendant. *See* N.Y. Civ. Rights Law § 50-a (McKinney 2014). *See also* Gary R. DeFilippo, *To Disclose or Not to Disclose: A Discussion of Civil Rights Law § 50-a, Protecting Law Enforcement Officers' Personnel Records from Unwarranted Review*, 14 J. Suffolk Acad. L. 103, 105 (2000).

witnesses on one's behalf and to confront and cross-examine the prosecution's witnesses for the purpose of challenging their testimony. *See* U.S. Const. amends. VI, XIV; S.D. Const. art. VI, § 7; *State v. Beckley*, 2007 S.D. 122, ¶ 9, 742 N.W.2d 841, 844. It is a basic tenant "of American jurisprudence that a statutory provision never be allowed to trump a Constitutional right." *State v. Karlen*, 1999 S.D. 12, ¶ 39, 589 N.W.2d 594, 602-03. In *Pennsylvania v. Ritchie*, 480 U.S. 39, 42-43, 107 S. Ct. 989, 993-94, 94 L. Ed. 2d 40 (1987), and *Davis v. Alaska*, 415 U.S. 308, 309, 94 S. Ct. 1105, 1107, 39 L. Ed. 2d 347 (1974), the Supreme Court of the United States addressed this interplay between the important constitutional rights of an accused and public policy concerns regarding the protection of documents.

[¶11.]     In *Davis*, the Court held that a defendant's right to effective cross-examination under the Confrontation Clause required that a defendant be able to question an adverse witness regarding the witness's confidential juvenile record. 415 U.S. at 309, 94 S. Ct. at 1107. The Court stated, "The State's policy interest in protecting the confidentiality of a juvenile offender's record cannot require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness." *Id.* at 320, 94 S. Ct. at 1112.

[¶12.]     Similarly, in *Ritchie*, the Court considered "whether and to what extent a State's interest in the confidentiality of its investigative files concerning child abuse must yield to a criminal defendant's Sixth and Fourteenth Amendment right to discover favorable evidence." 480 U.S. at 42-43, 107 S. Ct. at 993-94. Ritchie was charged with the rape of his minor child and had subpoenaed a file held by Child and Youth Services (CYS) containing information about the charge and

other records. CYS refused to produce the records, even for an in camera review, arguing that they were privileged under Pennsylvania law. The *Ritchie* Court held that the Confrontation Clause does not create "a constitutionally compelled rule of pretrial discovery." *Id.* at 52, 107 S. Ct. at 999. Instead, it affords criminal defendants two specific protections: "the right physically to face those who testify against him, and the right to conduct cross-examination." *Id.* at 51, 107 S. Ct. at 998.

[¶13.] Although the Confrontation Clause provides individuals with "the right to cross-examine those who testify against" them, it is well recognized "that the right to cross-examine is not absolute." *Karlen*, 1999 S.D. 12, ¶¶ 36-38, 589 N.W.2d 594, 602 (citing *Ritchie*, 480 U.S. at 53, 107 S. Ct. at 999). An individual is only guaranteed "an opportunity for *effective* cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Ritchie*, 480 U.S. at 53, 107 S. Ct. at 999 (emphasis added) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S. Ct. 292, 294, 88 L. Ed. 2d 15 (1985)). The Court recognized the strong "public interest in protecting this type of sensitive information" but also noted that such interest does not necessarily prevent disclosure in all circumstances. *Id.* at 57, 107 S. Ct. at 1001. Ultimately, the Court decided that due process requires an in camera review of the privileged file, especially when the discovery sought was material. In defining material evidence, the *Ritchie* Court stated:

> [E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable

> probability' is a probability sufficient to undermine confidence in the outcome.

*Id.* at 57, 107 S. Ct. at 1001 (quoting *Bagley*, 473 U.S. at 682, 105 S. Ct. at 3383).

[¶14.] Although this Court has not previously addressed personnel records, we have analyzed requests for production of privileged documents by subpoena duces tecum. In *Karlen*, the defendant was convicted at trial of several felonies, including rape in the second degree against A.J. 1999 S.D. 12, ¶ 4, 589 N.W.2d at 597. Prior to trial, Karlen sought A.J.'s counseling records, which were protected by the physician-patient privilege. Karlen argued that, at a minimum, such "records should have been reviewed in camera to determine whether exculpatory or contradictory information was present." *Id.* ¶ 28, 589 N.W.2d at 600. Karlen made a specialized showing contending: (1) that the evidence at trial showed that the victim had provided inconsistent statements regarding the incidents with which Karlen was charged, and (2) that the counseling records may contain evidence which would affect A.J.'s credibility and/or may exonerate Karlen.

[¶15.] We reversed the circuit court, relying in part upon *Ritchie*, finding that in light of the specific facts of the case, Karlen may have been denied information crucial to his defense. *Karlen*, 1999 S.D. 12, ¶ 46, 589 N.W.2d at 605. In concluding that Karlen was entitled to production of A.J.'s counseling records, we found that Karlen had made a sufficient showing that the evidence he sought was material and not for the purpose of a generalized attack upon A.J.'s credibility. The requested evidence was "directed toward revealing possible biases, prejudices, or ulterior motives as they may relate directly to issues or personalities in the case at hand." *Id.* ¶ 44, 589 N.W.2d at 604 (quoting *State v. Sprik*, 520 N.W.2d 595, 600 (S.D.

1994)).  Finding that Karlen may have been denied his right to effectively cross examine A.J., we ordered production of the records for in camera review by the circuit court.  We directed the court to release only the relevant portions of the records to the parties.  Thus, we have previously ordered the production of even statutorily privileged materials for in camera review when principles of due process so require.  However we did not discuss the parameters for discovery of documents under SDCL 23A-14-5 (Rule 17(c)) as the issue was not raised.

[¶16.]        It is against this backdrop that we consider the question whether the personnel records of law enforcement officers are discoverable under SDCL 23A-14-5 (Rule 17(c)).  The rules of discovery in criminal cases are set forth in SDCL chapter 23A-13 (Rule 16).  The rules governing the subpoena and attendance of witnesses are set forth in SDCL chapter 23A-14 (Rule 17).  SDCL 23A-14-5 (Rule 17(c)) provides for the production of documents and objects and is substantially similar to the Federal Rule of Criminal Procedure 17(c)(1)-(2).[4]  We routinely look to

---

4.      Federal Rule of Criminal Procedure 17(c) provides,

>       (c) Producing Documents and Objects.
>
>               (1) In General.  A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates.  The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence.  When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.
>
>               (2) Quashing or Modifying the Subpoena.  On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive.
>
>               (3) Subpoena for Personal or Confidential Information About a Victim.  After a complaint, indictment, or

(continued . . .)

the decisions of other courts for analytical assistance when a South Dakota statute is "substantially the same as its federal counterpart," as such decisions are particularly instructive. *See, e.g., Jacquot v. Rozum*, 2010 S.D. 84, ¶ 15, 790 N.W.2d 498, 503. As SDCL 23A-14-5[5] is substantially similar to Federal Rule of Criminal Procedure 17(c)(1)-(2), we examine the seminal cases addressing the use of subpoenas and the tests which have been developed.

[¶17.]     The Supreme Court of the United States first addressed production of documents under Rule 17(c) in *Bowman Dairy Co. v. United States*, where it considered the denial of a motion to quash a subpoena duces tecum. 341 U.S. 214, 217, 71 S. Ct. 675, 677, 95 L. Ed. 879 (1951). In its analysis, the Court differentiated Federal Rule of Criminal Procedure 16 from Rule 17(c). "Rule 16 deals with documents and other materials that are in the possession of the

_____

(. . . continued)

> information is filed, a subpoena requiring the production of personal or confidential information about a victim may be served on a third party only by court order. Before entering the order and unless there are exceptional circumstances, the court must require giving notice to the victim so that the victim can move to quash or modify the subpoena or otherwise object.

5.     SDCL 23A-14-5 provides,

> A subpoena may also command the person to whom it is directed to produce books, papers, documents, or other objects designated therein. A court on motion made promptly may quash or modify a subpoena if compliance would be unreasonable or oppressive. A court may direct that books, papers, documents, or objects designated in a subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, or documents, or objects or portions thereof to be inspected by the parties and their attorneys.

Government and provides how they may be made available to the defendant for his information." *Id.* at 219, 71 S. Ct. at 678. Rule 17(c), in contrast, provides a method for the defendant to subpoena such documents and materials for his or her personal use if they are not put into evidence by the government. However, "Rule 17(c) was not intended to provide an additional means of discovery. Its chief innovation was to expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials." *Id.* at 220, 71 S. Ct. at 679. Furthermore, Rule 17 was not intended "to give a right of discovery in the broadest terms." *Id.* To construe Rule 17 as a generalized tool for discovery would render Rule 16's requirements "nugatory and meaningless." *United States v. Carter*, 15 F.R.D. 367, 369 (D.D.C. 1954); *see also United States v. Binday*, 908 F. Supp. 2d 485, 492 (S.D.N.Y. 2012). Further, a court may "control the use of Rule 17(c) . . . by its power to rule on motions to quash or modify." *Bowman*, 341 U.S. at 220, 71 S. Ct. at 678.

[¶18.] Roughly one year later, in *United States v. Iozia*, the United States District Court for the Southern District of New York held that "there must be a showing of good cause to entitle the defendant to production and inspection of documents under Rule 17(c)." 13 F.R.D. 335, 338 (S.D.N.Y. 1952). The court identified a four-part test to assist trial courts in ruling on requests under Rule 17(c). The test required the defendant to establish:

> (1)  That the documents are evidentiary and relevant;
>
> (2)  That they are not otherwise procurable by the defendant reasonably in advance of trial by the exercise of due diligence;
>
> (3)  That the defendant cannot properly prepare for trial without such production and inspection in advance of trial and

the failure to obtain such inspection may tend unreasonably to delay the trial;

(4)     That the application is made in good faith and is not intended as a general fishing expedition.

*Id.*

[¶19.]     In 1974, the Supreme Court of the United States again addressed the use of subpoenas under Rule 17(c) in *United States v. Nixon,* 418 U.S. 683, 94 S. Ct. 3090, 41 L. Ed. 2d 1039 (1974).  The prosecutor filed a motion under Rule 17(c) for a subpoena duces tecum ordering the production of certain tapes and documents relating to "precisely identified" meetings and conversations involving the President and others.  *Id.* at 687-88, 94 S. Ct. at 3097.  The Court discussed the factors set forth in *Iozia* and distilled them, requiring the prosecutor to "clear three hurdles: (1) relevancy; (2) admissibility; [and] (3) specificity" for production of the documents. *Id.* at 700, 94 S. Ct. at 3103.  In denying the President's motion to quash the subpoena, the Court noted that "[a] subpoena for documents may be quashed if their production would be 'unreasonable or oppressive,' but not otherwise."  *Id.* at 698, 94 S. Ct. at 3103.  The Court found that the prosecutor was permitted to obtain the requested audio tapes because he had shown "there was a sufficient likelihood that each of the tapes contain[ed] conversations relevant to the offenses charged in the indictment."  *Id.* at 700, 94 S. Ct. at 3103.  The prosecutor met this burden by offering sworn testimony of participants in the recorded conversations or by giving reasons that permitted a rational inference of relevance, as well as by making a sufficient preliminary showing of admissibility.

[¶20.]     The *Nixon* test is well reasoned.  Many state and federal jurisdictions have adopted the test, including the Eighth Circuit Court of Appeals, providing

numerous decisions to reference for guidance.[6]  We adopt the three-part test set forth in *Nixon*, which obligates the requesting party to establish that the desired evidence is (1) relevant, (2) admissible, and (3) requested with adequate specificity.

[¶21.]	Sheriff Milstead and the State argue that upon application of the *Nixon* test, no court could reasonably conclude that the subpoenaed personnel records should be produced for an in camera review.  In contrast, Johnson contends that the circuit court did not abuse its discretion in ordering an in camera review as he satisfied the four-part test set forth in *Iozia.*  Johnson concedes that the records are not open to inspection and copying by the public.  But he claims the records are discoverable as they are relevant to the primary issue in this case—whether the true aggressor was Detective Qualseth or Johnson.  These records, he argues, may be necessary to afford him the opportunity to present a defense and fully cross-examine the State's witnesses.  We review the parties' arguments in light of the *Nixon* test.

a.	*Relevancy*

[¶22.]	"Evidence is relevant if: (a) It has any tendency to make a fact more or less probable than it would be without the evidence; and (b) The fact is of

---

6.	*See United States v. Stevenson*, 727 F.3d 826 (8th Cir. 2013); *United States v. Hardy*, 224 F.3d 752, 755 (8th Cir. 2000); *United States v. Hang,* 75 F.3d 1275, 1283 (8th Cir. 1996); *United States v. Arditti*, 955 F.2d 331, 346 (5th Cir. 1992), *cert. denied*, 506 U.S. 998, 113 S. Ct. 597, 121 L. Ed. 2d 534 (1992); *United States v. Miller*, 660 F.2d 563, 565 n.1 (5th Cir. 1981); *United States v. Marshall*, CR. 08-50079-02, 2010 WL 1409445, *1-2 (D.S.D. Mag. Div. Apr. 1, 2010); *United States v. Stein,* 488 F. Supp. 2d 350, 366 (S.D.N.Y. 2007); *United States v. Gel Spice Co., Inc.*, 601 F. Supp. 1214, 1225 (E.D.N.Y. 1985).

consequence in determining the action." SDCL 19-19-401. In determining the relevancy of law enforcement personnel files, we find persuasive the often-cited reasoning of the Court of Appeals of New York in *People v. Gissendanner*, 399 N.E.2d 924 (N.Y. 1979). In *Gissendanner*, the court reviewed a lower court's denial of a defendant's request to issue a subpoena for the police personnel files of prosecution witnesses. In performing its analysis, the court discussed the competing constitutional guarantees of compulsory process and confrontation with the need to safeguard the confidentiality of personnel records. The court concluded that, before production of such documents, a defendant must set forth a good-faith, factual predicate demonstrating that it is reasonably likely that the contents of the personnel file are material and "directly bear on the hard issue of guilt or innocence[.]" *Id.* at 928. The court explained that "when a defendant shows a likelihood that the witness' prior criminal or disciplinary record may provide a motive to falsify" or "when prior bad acts allegedly contained within disciplinary or personnel records bear peculiar relevance to the circumstances of the defendant's case, detailed cross-examination and disclosure, usually after an in camera inspection, have been permitted." *Id.* Access to personnel files however "has been denied [where] the defendant failed to demonstrate any theory of relevancy and materiality, but, instead, merely desired the opportunity for an unrestrained foray into confidential records in the hope that the unearthing of some unspecified information would enable him to impeach the witness." *Id.*

[¶23.]     A number of courts across the country similarly require that the defendant establish a good-faith, factual predicate making it reasonably likely that

the records would yield information that will be relevant and material to the defense. *See State v. Jones*, 59 A.3d 320, 333 (Conn. App. Ct. 2013), *aff'd*, 102 A.3d 694 (Conn. 2014) (stating information should be specific and should set forth the issue in the case to which the personnel information will relate);[7] *People v. Peters*, 972 N.Y.S.2d 145 (N.Y. App. Div. 2013); *State v. Blackwell*, 845 P.2d 1017, 1019 (Wash. 1993) (en banc). As the Appellate Court of Connecticut noted in *Jones*, "A showing sufficient to warrant an in camera review of a personnel file requires more than mere speculation." 59 A.3d at 333. *See also State v. Schwartz*, 552 P.2d 571, 574 (Or. Ct. App. 1976) (finding defense attorney's argument that "he had heard of a similar incident involving one of the same officers" to be an insufficient showing); *State v. Sagner*, 525 P.2d 1073, 1077 (Or. Ct. App. 1974) (holding that counsel's "pure conjecture" of officer's suspected disciplinary problems was insufficient to warrant production).

[¶24.]		The Supreme Court of Washington adopted the requirement of a factual predicate in *Blackwell*. 845 P.2d at 1022. Defendant sought production of officers' service records arguing they could lead to exculpatory evidence of improper police conduct and/or arrests based on race and excessive force. In reversing the trial court for ordering an in camera review, the supreme court noted that "[d]efense counsels' broad, unsupported claim that police officers' personnel files *may* lead to

---

7.		The Supreme Court of Connecticut in *State v. Januszewski*, affirmed an order for in camera review of an officer's personnel file to verify knowledge, based on information and belief, that the officer was the subject of prior disciplinary actions. 438 A.2d 679 (1980), *cert. denied*, 453 U.S. 922, 101 S. Ct. 3159, 69 L.Ed.2d 1005 (1981), *overruled in part on other grounds by State v. Ray*, 966 A.2d 148 (Conn. 2009).

material information does not justify automatic disclosure of the documents." *Id.* at 1021 (citing *State v. Kaszubinski*, 425 A.2d 711 (N.J. Super. Ct. Law Div. 1980)). The court held that the "defendant must advance some factual predicate which makes it reasonably likely the requested file will bear information material to his or her defense. A bare assertion that a document 'might' bear such fruit is insufficient." *Id.* at 1022.

[¶25.] We endorse the analysis in *Gissendanner* and *Blackwell* and require that Johnson establish a factual predicate showing that it is reasonably likely that the requested file will bear information both relevant and material to his defense. This is consistent with the approach we took in *Karlen*, where we required a case-specific showing of material evidence as a prerequisite for in camera review.

[¶26.] Johnson's showing of relevance is lacking. Johnson simply argues that Detective Qualseth used unnecessary force against him and that the requested information in the personnel records might produce information useful to impeach his credibility. It is well established however that "the need for evidence to impeach witnesses is [generally] insufficient to require its production in advance of trial." *Nixon*, 418 U.S. at 701, 94 S. Ct at 3104. Johnson submitted no affidavit, no evidence of prior conduct, no eye-witness corroboration, no statement upon information or belief, or offer of proof. His mere allegations are insufficient to subject the law enforcement officers' personnel records to a general, non-specific fishing expedition. Accordingly, he has failed to clear the first hurdle of the three-part test.

    b.  *Specificity*

[¶27.]     The requirement of specificity "ensures that the subpoenas are used only to secure for trial certain documents or sharply defined groups of documents." *United States v. Jackson*, 155 F.R.D. 664, 667 (D. Kan. 1994) (citing *United States v. Crosland*, 821 F. Supp. 1123, 1129 (E.D. Va. 1993)).  It also "prevents a subpoena *duces tecum* . . . from being used as a 'fishing expedition to see what may turn up.'" *United States v. Sellers*, 275 F.R.D. 620, 624 (D. Nev. 2011) (quoting *Bowman*, 341 U.S. at 221, 71 S. Ct. at 679).  Of the three requirements set forth in *Nixon*, "[s]pecificity is the hurdle on which many subpoena requests stumble."  *United States v. Ruedlinger*, 172 F.R.D. 453, 456 (D. Kan.1997).

[¶28.]     The circuit court's findings of fact provide that Johnson's subpoena duces tecum requests "[a]ll disciplinary records/reports, disciplinary actions or complaints made against the following Minnehaha County Sheriff Department's employees: Detective Joe Bosman, Detective Craig Butler, and Detective Ryan Qualseth[.]"  While the subpoena did identify the types of documents, which Johnson requested from the personnel records of Detectives Bosman, Butler, and Qualseth, it failed to limit the requested documents to a particular time frame.  Further, Johnson's request for "all" disciplinary records does little to narrow the scope of the subpoena.  Such broad language could require production of completely irrelevant materials and falls far short of the specificity necessary for production.  *See Arditti*, 955 F.2d at 345.  Johnson was unable to specify the information contained in or believed to be contained in the requested documents.  As the court noted in *United States v. Noriega*, "If the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but

merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused." 764 F. Supp. 1480, 1493 (S.D. Fla. 1991).

[¶29.] Johnson has failed to establish that the subpoena satisfies the necessary requirement of specificity. The "specificity and relevance elements require more than the title of a document and conjecture as to its contents." *Hardy*, 224 F.3d at 755 (quoting *Arditti*, 955 F.2d at 346). A subpoena may not issue based upon a party's "mere hope" that it will result in the production of favorable evidence. *Hang*, 75 F.3d at 1283; *United States v. Libby*, 432 F. Supp. 2d 26, 31-32 (D.D.C. 2006). To hold otherwise would permit review of personnel records of arresting officers in every case involving an assault upon an officer.

c. *Admissibility*

[¶30.] Johnson as the moving party must also make a preliminary showing that the requested material contains admissible evidence regarding the offenses charged. *Nixon*, 418 U.S. at 700, 94 S. Ct. at 3104. Sheriff Milstead argues that an in camera review of documents, where "there is no likelihood that the requested information ever becomes relevant or admissible in the underlying criminal case, . . . is unnecessary and burdensome."

[¶31.] The parties spend considerable time in their briefs to this Court arguing about the potential admissibility of various types of evidence under Federal Rules of Evidence 404(a), 404(b), 405, and 608. As we have found that Johnson has failed to satisfy the first two prongs of the *Nixon* test, we decline to address this factor.

[¶32.]     While the circuit court correctly determined that in certain circumstances personnel records of law enforcement officers are subject to review, it erred when it ordered production of the records in this case. In fairness to the circuit court, it was faced with a question of first impression and required to resolve the issue without direction from this Court as to what standard should be applied. A defendant must satisfy the *Nixon* test. Without satisfaction of the *Nixon* test, production of the requested records, including for the purposes of in camera review, is improper.

> 2.     *Whether the circuit court erred in ordering an in camera review of portions of the three detectives' personnel files.*

[¶33.]     The circuit court erred in ordering an in camera review of the personnel records in this case. This is because Johnson failed to satisfy the requirements of the *Nixon* test. In the future, if a court should determine that a party has made an adequate showing under *Nixon*, an in camera review by the circuit court is a necessary step before release of any records to the parties. Sheriff Milstead contends that, if an in camera review occurs, "there is nothing to prevent the trial court from providing the documents to opposing counsel without review." We affirm the important public policy interest in protecting the privacy and safety of law enforcement officers by preventing unfettered access to the release of information contained within their personnel files.[8] Courts, however, routinely

---

8.     This sentiment was well expressed in *People v. Norman*, where the court stated "that it is not a condition of a police officer's employment that his life story should be the subject of perusal by judge, prosecutor and defense counsel each time he makes an arrest." 350 N.Y.S.2d 52, 60 (N.Y. Sup. Ct. 1973).

order production of confidential and even statutorily privileged documents for in camera review in civil and criminal proceedings. And courts are authorized to impose necessary, effective, and strict restrictions on the use of these records. *Bowman*, 341 U.S. at 220, 71 S. Ct. at 678.

[¶34.]	We have discussed the parameters for in camera reviews in several cases involving production of alleged victims' psychological records. In *Maynard v. Heeren,* we considered an intermediate appeal from a circuit court's order requiring production of a plaintiff's psychotherapy records. 1997 S.D. 60, ¶ 1, 563 N.W.2d 830, 832. Plaintiff's claims involved negligent misrepresentation, slander, invasion of privacy, and intentional infliction of emotional distress. In ordering full disclosure of the records, we required that an "in camera hearing must be held in the presence of both parties, both parties must have access to the contested information, and both parties must be allowed to make their record." *Id.* ¶ 15, 563 N.W.2d at 836. Two years later we adopted a more circumscribed approach. *See Karlen*, 1999 S.D. 12, ¶¶ 45-46, 589 N.W.2d at 604-05. We directed that upon remand the in camera review should be conducted solely by the circuit court, with only the relevant portions of the record being turned over to the parties for review. We continue to adhere to the more circumscribed approach because it balances the privacy concerns of the officer while protecting the rights of the accused.

[¶35.]	Should an in camera review be deemed proper under *Nixon*, it is within the sound discretion of the circuit court to determine what restrictions are appropriate for use and dissemination of the records. If the court concludes that portions of the records are discoverable, the court shall place "reasonable

restrictions upon dissemination and use of the sought-after material." *Maynard*, 1997 S.D. 60, ¶ 15, 563 N.W.2d at 835. The disclosure of such information must be carefully tailored to the legitimate need for the information in the case. *Januszewski*, 438 A.2d at 694. As the Court found in *Nixon*, "in camera inspection of evidence is always a procedure calling for *scrupulous protection* against any release or publication of material not found by the court, at that stage, probably admissible in evidence and relevant to the issues of the trial for which it is sought." 418 U.S. at 714, 94 S. Ct. at 3110-11 (emphasis added). The circuit court is equipped with necessary enforcement tools, such as Rule 11, "to assure that no privileged information is misused by the discovering litigant." *Maynard*, 1997 S.D. 60, ¶ 17, 563 N.W.2d at 836; SDCL 15-6-11.

## Conclusion

[¶36.] The personnel records of law enforcement officers are confidential, but not shielded from discovery when a constitutional right of an accused is implicated. Even so, Rule 17(c) was not intended as a tool for discovery in criminal cases. When a party seeks production of documents under Rule 17(c), that party must first establish that the requested evidence is (1) relevant, (2) admissible, and (3) requested with adequate specificity. A circuit court may modify or quash a subpoena if it determines production of the documents is oppressive or unreasonable. If the requisite showing for production of documents is made, the circuit court shall order the documents produced for in camera review. If the court determines that portions of the record are discoverable, it shall carefully tailor

necessary restrictions on the use and dissemination of the records to maintain privacy.

[¶37.] As Johnson failed to meet his burden of establishing the elements of the *Nixon* test, the circuit court erred in ordering Sheriff Milstead to produce portions of the personnel records of Detectives Bosman, Butler, and Qualseth for in camera review. We reverse.

[¶38.] GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and WILBUR, Justices, concur.